UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) | Case No.: 11-5057 |
| Plaintiff, | ) ) ) | **MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| AMY JENSON, | ) ) ) | |
| Defendant. | ) ) | |

Comes now the Plaintiff, respectfully submits its memorandum in response to Defendant's motion for summary judgment. For the reasons stated herein, Plaintiff requests that the Court declare and determine, under the undisputed material facts presented by Defendant and applying South Dakota law, whether Amy Jenson is the proper beneficiary to the life insurance proceeds at issue.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For purposes of this motion, American General Life Insurance Company ("American General") does not dispute Defendant's Statement of Material Facts. *See* Plaintiff's Response to Defendant's Statement of Undisputed Material Facts. Amy Jenson is a named beneficiary on the life insurance policy. But SDCL 29A-2-804 provides for automatic revocation of beneficiary designations upon divorce. Amy and Patrick were divorced. The legal question facing the Court is whether Amy Jenson is the proper beneficiary of Patrick Jenson's American General Life Insurance policy under the exceptions to SDCL 29A-2-804. The parties agree on the following facts.

Amy Jenson, f/k/a Amy Lane, and Patrick Jenson had a long relationship. Before being wed on July 5, 2003 at Sylvan Lake, the couple had dated since high school. Defendant's Statement of Undisputed Material Facts Nos. 1-2. They attended college together at both South Dakota State University and the University of South Dakota. Id. at No. 3. Amy ultimately received her Masters Degree in occupational therapy and Patrick almost earned a Bachelors degree. Id. at Nos. 4-5. For the past thirteen years, Amy has worked at Rapid City Regional Hospital. Id. at No. 6. The couple had two children, J.J. and C.J. Id. at No. 7.

During the marriage, the couple hired Hugh Boyle of BMS Financial Advisors as their financial advisor. Id. at No. 9. Mr. Boyle was, at all relevant times, an agent for American General. Id. at No. 12. Through his position as financial advisor, Mr. Boyle recommended Amy and Patrick purchase life insurance through American General. Id. at No. 10. On or around April 2006, American General issued two renewable level term life policies. Id. at Nos. 11, 13. Policy number YME0415058 was issued on Patrick's life in the amount of $500,000.00 with Amy as the sole beneficiary with no contingent beneficiaries. Id. at Nos. 15-16. A similar policy was issued on Amy's life with Patrick as the beneficiary. Id. at No. 14. It is undisputed that Amy agreed to pay all monthly premiums for Pat's policy out of her personal, separate checking account. Id. at No. 17.

Patrick and Amy's long relationship and subsequent marriage faced difficulties when Pat developed an alcohol problem. Id. at No. 18. Pat refused to get help and Amy filed for divorce, believing the divorce would motivate Pat to seek counseling. Id. at Nos. 19-20. Pat did not consent to divorce and throughout the divorce proceedings continued to live in the marital home at 201 Ray Ann Court, Rapid City, SD. Id. at Nos. 8, 21-22. Although Pat did receive treatment

on numerous occasions, on February 24, 2008, Amy was granted a default judgment on the divorce. Id. at Nos. 23-24.

Despite the divorce, Amy recognized Pat's efforts and desire to get help, and the couple continued their relationship. Id. at No. 25. After the divorce, other than when Pat was drinking or in treatment, he lived and resided in the family home. Id. at No. 27. Prior to and after the divorce, Pat never owned a separate, permanent residence. Id. at No. 28. Pat and Amy continued to live at the martial home until Pat's passing. Id. at No. 27. In addition to the living arrangements, it is undisputed that Pat and Amy functioned as a couple even after the divorce. Id. at No. 30. The couple had marital relations, raised their children as they had before the divorce, and mailed family Christmas cards with Amy, Pat, and the kids together. Id. at Nos. 30-31. Pat even referred to Amy as his "wife" and the kids, and some relatives, were unaware of the divorce. Id. at Nos. 32-34.

Although the couple acted as though the divorce never occurred, the divorce did result in certain financial arrangements. As a result of the divorce, Pat and Amy had an agreement regarding child care, household expenses, and other expenses. Id. at No. 35. Pat agreed to pay Amy $500 per month for all the household bills. Id. at No. 36. This amount coincided with Pat and Amy's divorce stipulation regarding child support. Id. This $500 represented Pat's only contribution to he household bills. Id. at No. 37.

The most significant undisputed material fact regarding this post-divorce financial arrangement was that the parties agreed Amy would continue paying the monthly premiums on Pat's life insurance policy. Id. at Nos. 38, 40. In return, Pat agreed that Amy would remain the designated beneficiary. Id. This agreement continued each year after the divorce upon the parties' annual meeting with their financial advisor. Id. at No. 39. Pat was aware that Amy was

in fact making the monthly premium payments, and he consented to the arrangement. Id. at No. 41.

It is undisputed that Amy continued to make the monthly $56.44 premium payments each month after the divorce until Pat passed away. Id. at Nos. 42-43. In total, Amy paid $1,988. Id. at No. 44. There is no dispute that Amy would not have continued to make the premium payments on Pat's policy if Pat did not agree to keep her as the beneficiary. Id. at No. 45.

The couple also continued to work with financial advisor Hugh Boyle after the divorce. Id. at No. 46, 49. Each year Mr. Boyle would meet with the couple to review their financial plan. Id. at No. 47. During these post-divorce joint meetings, Mr. Boyle was aware of the divorce. Id. at Nos. 48-49. An important discussion at these annual meetings was the parties beneficiary designations on their accounts, including the life insurance contracts. Id. at No. 50-51. Mr. Boyle would specifically ask Pat his intention for beneficiary designation on the American General policy and in 2009 and 2010 Pat affirmatively indicated and agreed that Amy was to remain his beneficiary. Id. at No. 52. Since issued, Amy has always been the beneficiary of Pat's policy. Id. at No. 53.

Upon personally hearing Pat's intent to keep Amy as beneficiary at these post-divorce meetings, Mr. Boyle did not believe any further or additional action or documentation would be necessary. Id. at No. 56. Mr. Boyle was of the understanding that Amy remained beneficiary pursuant to the parties' financial arrangement and agreement. Id. Mr. Boyle confirmed and it is undisputed that since the policy's issuance up to his passing, it was Pat's express intent that Amy be the beneficiary of the proceeds, despite the divorce. Id. at No. 57.

The American General policy does in fact name Pat as the insured and Amy as the beneficiary with no contingent beneficiaries. Id. at No. 58, 64. Pat could have changed the

beneficiary by written notice to American General. Id. at No. 60. But at no time did Pat provide written notice to American General that he desired to change the named beneficiary and at all times Amy was so named. Id. at No. 61. Pat died on January 2, 2011 and the most recent the American General policy account summary (March 9, 2011) identifies Amy as beneficiary. Id. at Nos. 62, 58. At the time of death, the premiums for Pat's policy were paid in full with all payments being automatically withdrawn from Amy's individual account. Id. at No. 63.

Based on these undisputed facts, the parties request Court guidance on the application of SDCL 29A-2-804. Specifically, the Court is asked to determined if SDCL 29A-2-804 automatically revoked Amy's designation and if the parties financial arrangement and agreement was sufficient to fall within the exceptions to automatic revocation.

## ARGUMENT AND AUTHORITIES

### I. Summary Judgment is Appropriate

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Montoya v. City of Flandreau, CIV 09-41 56-RAL, 2011 WL 902483 (D.S.D. Mar. 15, 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure)). In a determination of whether summary judgment is warranted, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). Where the unresolved issues are primarily legal rather than factual, summary judgment is

particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Here, the facts are undisputed and the parties agree on the applicable law. The only question is whether under those facts and law Amy Jenson is the proper beneficiary of Pat's American General life insurance policy. This is a legal issue appropriate for summary determination by the Court. To assist the Court in making its determination, this memorandum will set forth the applicable law and potential outcomes.

## II. SDCL 29A-2-804

SDCL 29A-2-804 caused American General to initiate proceedings to receive the Court's determination as to whether Amy Jenson is the proper beneficiary of Pat Jenson's life insurance proceeds. This provision is known as the "revocation-upon-divorce" statute and provides in pertinent part as follows:

> (b) Except as provided by the express terms of a governing instrument, a court order, *or a contract relating to the division of the marital estate made between the divorced indiv*I*duals before or after the marriage, divorce,* or annulment, the divorce or annulment of a marriage:
>
> > (1) Revokes any revocable (i) disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument and any disposition or appointment    created by law or in a governing instrument to a relative of the divorced individual's former spouse . . . .
> 
> . . .
>
> (d) Provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the former spouse and relatives of the former spouse died immediately before the divorce or annulment.

SDCL 29A-2-804 (emphasis added). This statute applies to beneficiary designations in life insurance policies which qualify as a "governing instrument." *See* SDCL 29A-2-804(a)(1) and (4).

To date, there is one recorded South Dakota decision interpreting SDCL 29A-2-804. *See* Buchholz v. Storsve, 2007 SD 101, 740 NW2d 107. The South Dakota Supreme Court stated that this statute superseded the common law rule that divorce did not affect a beneficiary designation. Id. ¶ 9. Citing Stillman v. Teachers Ins. & Annuity Ass'n College Retirement Equities Fund, 343 F.3d 1311, 1317 (10th Cir. 2003), the South Dakota Supreme Court stated this statute recognizes "that when spouses are sufficiently unhappy with each other that they obtain a decree of divorce, neither is likely to want to transfer his or her property to the survivor on death." Buchholz, 2007 SD 101, ¶12, 740 N.W.2d at 111. The South Dakota Supreme Court adopted further language stating SDCL 29A-2-804 "attributes an intent to the donor based on an assessment of a typical donor's intention." Buchholz, 2007 SD 101, ¶12, 740 N.W.2d at 111 (citing Stillman, 343 F.3d at 1318. But this attribution of intent is rebuttable as SDCL 29A-2-804 includes numerous exceptions that may render the statute inapplicable.

The three exceptions to the automatic revocation statute indicate that divorce automatically revokes an ex-spouse's beneficiary designation in a governing instrument "[e]xcept as provided by the express terms of" (1) "a governing instrument," (2) "a court order," or (3) "a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment." SDCL 29A-2-804(b).

The facts of Buchholz provide some guidance to the current matter. In that case, a couple divorced and the retirement-account holder remarried. Buchholz, 2007 SD 101, ¶¶ 2-5, 740 N.W.2d at 109-110. But the account-holding spouse that remarried did not change the

beneficiary designation on the retirement account and the former spouse remained the beneficiary.  Id.  From this, the former spouse who remained the beneficiary argued that the account holder's intent clearly indicated that the former spouse was to remain the beneficiary despite the divorce.  Id. ¶¶ 13-16, 740 N.W.2d at112.  He also maintained that because he was left as the beneficiary on the account, the automatic revocation statute does not apply because the "governing instrument" exception applies as he was expressly designated as beneficiary.  Id.  The gov

The South Dakota Supreme Court rejected the "governing instrument" theory, interpreting that exception to require that "the governing instrument contain express terms referring to divorce, specifically stating that the beneficiary will remain" despite the divorce.  Id. ¶ 15, 740 N.W.2d at112.   Here, the American General policy does not include such a provision.

The South Dakota Supreme Court also rejected the theory that the account holder's inactions of not removing the former spouse indicates her intent to leave the former spouse as the beneficiary despite the divorce.  Id. ¶ 16, 740 N.W.2d at112.  Citing an Arizona court, the South Dakota Supreme Court rejected this theory stating the purpose of SDCL 29A-2-804 "would be eviscerated if a former spouse could circumvent the automatic revocation effected by the statute by submitting self-serving testimony that the decedent's spouse's inaction reflected an intention to revise his or her designation of the ex-spouse as the beneficiary."  Id. ¶ 16, 740 N.W.2d at112 (citing Estate of Lamparella, 210 Ariz. 246, 109 P.3d 959, 966 (Ct. App. Div. 1 2005)).  Significantly, the South Dakota Supreme Court held cited with approval language indicating that "if a divorced spouse wishes to redesignate the former spouse as beneficiary post-dissolution, such designation must be in writing and must otherwise comply with applicable policy terms."  Id.

In Buchholz, the South Dakota Supreme Court ultimately decided that the account holder's inaction does not equate with consent. Id. ¶ 17, 740 N.W.2d at 112. It held that the former spouse failed to show that such inaction rises to a clear indication of a contrary intent attributed by SDCL 29A-2-804. Thus, the former spouse was automatically revoked as beneficiary upon divorce. Id.

The Buchholz decision did not provide clear guidance on whether "clear indication of a contrary intent" by a deceased policy holder is sufficient to overcome automatic revocation. Neither did the Buchholz decision interpret the "contract" exception to SDCL 29A-2-804.

**III. Automatic Revocation and the Exceptions to SDCL 29A-2-804**

Amy Jenson maintains that SDCL 29A-2-804 creates, at most, a rebuttable presumption that can be overcome by "clear indication of a contrary intent." *See* Brief of Amy Jenson, at 10. Indeed, certain language from Buchholz supports this position. The South Dakota Supreme Court indicated that the former spouse has a burden to show "inaction rises to a clear indication of a contrary intent to her decree of divorce[.]" Id. ¶ 17, 740 N.W.2d at 112. This language does suggest that a "clear indication" may be sufficient to overcome the presumption without utilizing one of the express exceptions found in SDCL 29A-2-804. But this issue was not decided in Buchholz and such an interpretation of the statute appears to eviscerate its purpose and counter express terms of the statute. The following two potential interpretations are plausible.

1. <u>Automatic revocation unless exception is satisfied</u>

The terms of SDCL 29A-2-804 indicate that "clear indication of a contrary intent" is insufficient to overcome the presumption. Pursuant to that statute, unless an exception applies, Pat's designation of Amy as beneficiary was revoked upon entry of the divorce decree. SDCL 29A-2-804. Indeed, upon entry of the divorce decree, Amy was deemed to have disclaimed her

right to receive the policy proceeds as beneficiary. SDCL 29A-2-804(d) provides: "Provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section[.]. As written, the plain language of the statute does not support Amy Jenson's position that the statutory purpose was merely to discern the intent of the insured. See Mearns v. Scharbach, 103 Wash.App 498, 507-508 (2000). Rather, the express exceptions in the statute and the automatic disclaimer provision indicate that automatic revocation occurs unless one of the express exceptions applies. Moreover, this furthers one purpose of South Dakota's Probate Code – "to promote simplification, clarification, and efficiency in the law of decedent's estates, guardianship and conservatorship, and multiple-party accounts and other nonprobate transfers." SDCL 29A-1-102.

2. SDCL 29A-2-804 creates a rebuttable presumption that may be overcome by clear intention to the contrary.

American General is aware of courts that have adopted Amy's position. The case cited by Amy is most instructive. In State Farm Life Insurance Company v. Davis, 2008 WL 2326323 (D. Alaska 2008) the former spouse adopted a nearly identical position as Amy Jenson in the case at bar. In that case, the account holder told the employee of an insurance agency from whom he had purchased a policy that he continued to desire that his spouse remain the beneficiary despite the divorce. Id. at *1. The Alaska court read the automatic revocation statute together with the probate code construction statutes and held that such a statute "creates a rebuttable presumption" that may be overcome by a "preponderance of the evidence that the particular donor's intention differs from common intention." Id. at *3-4. The Alaska district court held that the Alaska Supreme Court "would construe the revocation-upon-divorce provision of the Alaska Probate code to create a rebuttable presumption, not a strict an inflexible

rule. Id. "The Alaska court would do so in order to achieve the fundamental goal of honoring the decedent's actual intention." Id.

Certain language in Buchholz indicates the South Dakota Supreme Court may adopt the Alaska district court's reasoning. The South Dakota Supreme Court expressly stated that the former spouse has a burden to show "inaction rises to a clear indication of a contrary intent to her decree of divorce[.]" Id. ¶ 17, 740 N.W.2d at 112. This clearly suggests that if sufficient intent was shown, the presumption would be overcome. Moreover, as indicated in Amy Jenson's brief, the "underlying purposes and policies of the [UPC] are . . . to discover and make effective the intent of a decedent in distribution of his property[.]" UPC 1-102(b)(2). However, this provision of the UPC does not appear in South Dakota's adopted version.

Accordingly, a threshold issue for the Court is to determine whether SDCL 29A-2-804 creates a rebuttable presumption that can be overcome by clear indication of contrary intent. If it does, then the parties are asking the court to consider the undisputed facts and to declare whether Patrick Jenson made such a clear indication that he desired Amy to remain as beneficiary despite the divorce.

Alternatively, the Court may determine that automatic revocation applies unless one of the express exceptions is met. If the Court believes the South Dakota Supreme Court would take this position, it must then determine whether the parties entered into "a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment." SDCL 29A-2-804(b).

**IV. Contract Exception to SDCL 29A-2-804**

The Court may determine that the plain language of the statute does not create a presumption that can be overcome by showing clear indication of contrary intent. But SDCL

-11-

29A-2-804 does create a rebuttable presumption – revocation is presumed and is automatic unless one of the three exceptions applies. SDCL 29A-2-804(b) ("Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage . . . the divorce or annulment of marriage revokes any revocable (i) disposition, appointment, provision, or nomination[.]"). Therefore, the Court is asked to determine whether the contract exception to SDCL 29A-2-804(b) precludes application of the automatic revocation statute.

Initially, it must be noted that the language from Buchholz suggests that automatic revocation cannot be overcome absent a designation or redesignation in writing. See Buchholz, ¶ 16, 740 N.W.2d at 112. The Buchholz court stated, "if a divorced spouse wishes to redesignate the former spouse as beneficiary post-dissolution, such designation must be in writing and must otherwise comply with applicable policy terms." Id. But this language in Buchholz was not discussing the contract exception. There is no indication that a written contract is needed for the contract exception to SDCL 29A-2-804. Simply put, if there was a contract relating to the beneficiary designation before or after divorce, the automatic revocation of SDCL 29A-2-804 is inapplicable.

The existence of a valid express contract is a question of law to be determined by a court, not a jury. Mid-America Mktg. Corp. v. Dakota Industries, 289 N.W.2d 797 (S.D. 1980). An express contract results when the parties mutually express an intent to be bound by specific terms and conditions. Van Zee v. Witzke, 445 N.W.2d 34 (S.D. 1989). A contract is implied "where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or

-12-

acts done by them, or other pertinent circumstances attending the transaction." <u>Weller v. Spring Creek Resort, Inc.</u>, 477 N.W.2d 839, 841 (S.D. 1991).

The Court, based on the above law, is therefore asked to consider the undisputed facts to determine whether a contract existed between Pat and Amy regarding her remaining the beneficiary of the American General life insurance proceeds. If the Court determines such an agreement existed, SDCL 29A-2-804 is inapplicable and Amy is the proper beneficiary of Pat's life insurance proceeds.

## CONCLUSION

The Court is initially requested to determine whether SDCL 29A-2-804 creates a rebuttable presumption that can be overcome by "clear indication of contrary intent." If it can, the Court must determine whether Amy has met her burden and proved such intent by Pat that she was to remain beneficiary despite the divorce.

Although certain language in <u>Buchholz</u> suggests the application of the statute can be overcome by "clear indication of contrary intent," the statutes plain language indicates otherwise. The statute includes express exceptions and a disclaimer provision indicating automatic revocation is complete unless an exception applies. Therefore, based on the undisputed facts, the Court is alternatively requested to declare whether Amy Jenson has satisfied the contract exception to SDCL 29A-2-804 thereby entitling her to the American General life insurance proceeds.

Dated: December 5, 2011.

GUNDERSON, PALMER, NELSON
   & ASHMORE, LLP


By:*/s/J. Crisman Palmer*
   J. Crisman Palmer
   Attorneys for plaintiff,
   American General Life Insurance Company
   506 Sixth Street
   P.O. Box 8045
   Rapid City, SD 57709
   Telephone: (605) 342-1078
   Telefax: (605) 342-0480
   E-mail: cpalmer@gpnalaw.com

**CERTIFICATE OF SERVICE**

   I hereby certify on December 2, 2011, a true and correct copy of **MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was served electronically through the CM/ECF system upon the following individuals:

Michael C. Loos
Clayborne, Loos & Sabers, LLP
P.O. Box 9129
Rapid City, SD 57709-9129
E-mail: mloos@clslawyers.net
*Attorneys for defendant,*
*Amy Jenson*

                  By: *:/s/J. Crisman Palmer*
                    J. Crisman Palmer